**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RICARDO SUGGS, Jr.,**

        **Petitioner,**

                                   **Civil action no. 5:09cv57**
    **vs.**                               **Criminal action no. 5:06cr27**
                                   **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**REPORT AND RECOMMENDATION**

**I.  Introduction**

On May 27, 2009, petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt.# 195), with an attached Memorandum in Support. (Dkt.# 195-1).  On June 2, 2009, the Government was ordered to respond. (Dkt.# 200).  The Government filed its response on July 14, 2009.[1]  Petitioner filed his Reply to the Government on July 27, 2009.  (Dkt.# 210).

This case is before the undersigned for a preliminary review and Report and Recommendation pursuant to Standing Order No. 4 and LR PL P 83.15, *et seq.*

**II.  Facts**

**A.  Conviction and Sentence**

On June 6, 2006, the petitioner was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a)(2).  He was released on a personal recognizance bond and the matter was set for trial to begin on July 26, 2006.  In the early

---

[1] The Government's June 26, 2009 motion for an extension of time in which to file its response (Dkt.# 206) was granted by Order on June 30, 2009.  (Dkt.# 207).

morning hours of July 21, 2006, one of the government's key witnesses in the case and that witness' mother were shot in their home. Both survived and identified petitioner as the individual who shot them. The July 26, 2006 trial was continued and a superseding indictment filed, again charging petitioner with being a felon in possession of a firearm, along with three new counts related to his tampering with the witness, the shootings and the use of force. On November 2, 2006, petitioner, through counsel, filed a motion to bifurcate Count One of the superseding indictment from the remaining, later-added counts, requesting separate trials to accomplish petitioner's stated goal of not testifying as to Count One while testifying to Counts Two, Three and Four. The motion to bifurcate was granted.

On November 8, 2006, after a two-day jury trial on Count One only, petitioner was found guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a)(2).

On January 11, 2007, after a three-day jury trial on the three remaining counts, petitioner was found guilty of Count Two, a charge of tampering with a witness - intent to kill, in violation of 18 U.S.C. § 1512(a)(1)(A), and Count Three, tampering with a witness - use of force, in violation of 18 U.S.C. § 1512(a)(2)(A).[2]

On April 16, 2007, petitioner was sentenced to a total term of 324 months imprisonment, the lowest end of the Guideline range, on all three counts, to be followed by a three-year term of supervised release.

**B. Direct Appeal**

Petitioner filed a notice of appeal on April 18, 2007. On appeal, petitioner contended that: (1) the evidence was insufficient to convict him on any of the three counts; (2) the District Court

---

[2] Petitioner was found not guilty of the remaining Count Four: tampering with a witness - corruptly persuade, in violation of 18 U.S.C. § 1512(b)(1).

erred at the first trial on Count One, when it permitted introduction of evidence of the cocaine and marijuana found in his car; (3) the District Court erred at the second trial when it permitted the introduction of certain crime scene photos and a 911 call recording.

On February 19, 2008, the Fourth Circuit Court of Appeals affirmed the petititioner's conviction and sentence in an unpublished *per curiam* opinion. (Dkt.# 186). Mandate issued on March 12, 2008. (Dkt.# 187). Petitioner filed a petition for writ of *certiorari* with the U.S. Supreme Court which was denied on May 27, 2008. (4th Cir. Dkt.# 48) (07-4430).

## C. Federal Habeas Corpus

### Petitioners' Contentions (Dkt.# 195 and 195-1)

In his federal habeas petition, petitioner raises four grounds, alleging that:

(1)     trial counsel was ineffective for failing to advise him to plead guilty to Count One, the felon in possession of a firearm charge;

(2)     trial counsel was ineffective at his second trial on Counts Two, Three and Four, for failing to use the stipulation petitioner entered into with the Government, regarding his intent to plead guilty to Count One;

(3)     trial counsel was ineffective for incorrectly advising petitioner of his proposed Count Two guilty plea sentencing exposure; and

(4)     appellate counsel was ineffective for failing to raise the issue of the constructive amendment on Count Three on appeal.

As relief, petitioner requests that his convictions be vacated and that he be re-sentenced.

### Government's Response (Dkt.# 209)

(1)     Petitioner's ineffective assistance of counsel claims are defeated because:

(a)     Petitioner's claim that counsel was ineffective for not advising him to plead guilty to Count One has no merit. The letters from defense counsel attached to petitioner's motion reveals that counsel clearly believed that should petitioner proceed to trial, he would most certainly be convicted. Further, counsel indirectly suggests that petitioner should plead guilty. It can be

presumed therefore, that it was petitioner's choice to proceed to trial *against* the advice of counsel. The witness Alexander testified that petitioner knew he was facing several years in prison even if he pled, because he told Alexander that he simply could not do that much time [and therefore needed to 'murk' the witness Sears]. A defendant who refuses to accept responsibility cannot be forced by counsel to plead guilty. Petitioner gambled by going to trial and lost; it does not follow that his counsel was ineffective.

(b)    Petitioner's contention that the stipulation, properly used, would have demonstrated he lacked the requisite intent to tamper with the witness Sears demonstrates flawed reasoning. Defense counsel's strategic decision not to use the stipulation likely was made after a thorough consideration of the likely consequence of it confusing the jury or diminishing petitioner's credibility in the jurors' eyes, because the stipulation would only highlight the contradiction between petitioner's purported intentions and his actual behavior, an issue the Government focused on during petitioner's cross examination. Further, even if it were error not to use the stipulation, it did not prejudice petitioner, because his guilty plea to Count One would have established the same result that the conviction did: that he was guilty as to Count One.

(c)    Petitioner's motion misquotes what the attached letters from counsel actually stated as the potentially applicable sentencing range for Count Two. Further, petitioner omits mention that counsel's letters also contained repeated admonishments that the sentencing estimates were merely counsel's own best guess, advising him that the Court would make its own determination as to what sentence he would receive. Petitioner is correct that the two-level enhancement for obstruction of justice was inapplicable because it was based on the same conduct as the witness tampering charge, but petitioner, by perjuring himself at trial, received a two-level enhancement anyway, so he ended up at the same place. Finally, petitioner is unable to prove by a preponderance of evidence that but for counsel's ineffective assistance, he would have pled guilty. The facts and testimony at trial indicate that petitioner was unwilling to serve even two to five years because he did not want to miss his newborn baby's childhood. The plea would have guaranteed him at least fourteen years; it is implausible to suggest that he was willing to accept it. The facts and circumstances clearly suggest petitioner was not willing to enter *any* plea, even if he had been properly advised of his sentencing exposure. Because petitioner cannot overcome this hurdle, the court need not consider whether he was prejudiced by counsel's representation.

(d)    Appellate counsel was not ineffective for failing to raise the constructive

amendment of Count Three argument on appeal, because it would not have survived a plain error review. Further, even if the jury had not heard the erroneously-included word "intimidated" in connection with Count Three, and had correctly limited its consideration of the evidence to only the use of physical force, because the evidence of physical violence and force was so overwhelming, it would have reached the same decision. Furthermore, this claim is moot, because even if the conviction on Count Three were vacated, petitioner's sentence would still be the same, because he received the exact same sentences on Counts Two and Three, to be served concurrently. As such, he cannot prove he was prejudiced by counsel's failure to raise this claim on appeal. Appellate counsel likely did not raise a constructive amendment argument on appeal because of this very futility.

**Petitioner's Reply (Dkt.# 210)**

In his reply, Petitioner reiterates his previous claims, re-ordered here for consistency and attempts to refute the Government's position on the same. The claims are re-ordered here for consistency.

(a)     Petitioner states that if had counsel properly advised him to plead guilty to Count One, it would made his claim at trial that he had no intent to try to influence, delay or prevent the witness Sears' testimony more credible, such that the "victim's [sic] identification of him would have been irrelevant." (Dkt.# 210 at 2). To explain why he never actually pled to Count One as he intended, Petitioner states "as it relates to before the filing of the Superseding Indictment, the stipulation . . . proves beyond a reasonable doubt that he had in fact decided to plead guilty to the firearm charge . . . [and] after the filing of the Superseding Indictment, trial counsel never told [him] . . . he could plead guilty to the firearm charge and proceed to trial on the remaining three counts." (Id. at 2). Had he known it was an option he "would have pleaded guilty to the firearm charge immediately." (Id. at 2 -3).

(b)     Petitioner denies that he claimed the stipulation regarding his intent to plead guilty to Count One would have proved his innocence or demonstrated that he lacked the requisite intent to commit the crimes charged in Counts Two, Three and Four and instead proffers that had counsel used the stipulation in the later witness tampering trial, it "would have caused sufficient doubt on the Government's ability to prove an essential element of Counts Two and Three, that is, the [sic] he intended to influence delay, or prevent the testimony of Mr. Sears at any official proceeding." (Id. at 3). Petitioner contends that, contrary to the Government's position, he did not misunderstand the purpose of the stipulation, asserting that he "now understands the consequences of the stipulation, which the Government obviously does not." (Id.). He argues that had the stipulation been used, it would have established his intent to

plead guilty to the felon in possession charge, obviated the "official proceeding" requiring the testimony of the witness Spears on the Count One weapons charge, and would have excluded the "impeached testimony of Jamal Alexander." (Id.). He denies that the decision not to use the stipulation at trial was a strategic decision by counsel and argues that the Government should have obtained an affidavit from counsel to establish why he did not. Petitioner claims prejudice from counsel's failure to use the stipulation, stating that if the Government could not connect the intent to kill to an "official proceeding," the Court might have granted a Rule 29 motion for acquittal. Alternatively, the jury might have acquitted him.

(c)     Petitioner disagrees with the Government's facts and conclusions as to the applicable guidelines for Count Two.

(d)     The Government was incorrect as a matter of law in concluding that petitioner did not meet the fourth prong of the plain error test. Therefore, Count Three, which even the Government admits it was constructively amended, must be dismissed.

Finally, petitioner asserts that "[t]o the extent the Government's factual allegations are not supported by the trial record, Mr. Suggs assumes the Government accepts the sworn facts contained in his 2255 Motion and Memorandum." (Id. at 1).

As relief, petitioner request that that the District Court vacate his convictions on Counts One, Two and Three, permit him to plead guilty to Count One and be retried on Count Two and Three, or, in the alternative, vacate and dismiss Count Three based on its constructive amendment. As another alternative, he proposes that his convictions on Counts One, Two and Three be vacated, permitting him to enter a plea of guilty to Count Two. He requests that he be granted an evidentiary hearing to resolve factual disputes in his § 2255 motion claims of ineffective assistance of counsel.

### III.  Analysis

### A.     Petitioner's Burden of Proof

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006.

## B.    Ineffective Assistance of Trial Counsel

**Ground One: Whether trial counsel was ineffective for failing to advise petitioner to plead guilty to Count One.**

Petitioner contends that counsel was ineffective because counsel failed to advise him to plead guilty to Count One, once it was severed from the later-added witness-tampering counts for trial purposes. He asserts that since he had already made up his mind to plead guilty to Count One [felon in possession] in the original indictment,[3] his mistaken identify defenses at the later trial on the witness tampering charges would have been more credible had he actually already pled guilty, because on cross-exam, the Government was able to elicit an admission from him that despite his declared *intent* to plead to Count One, he never did in fact do so.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors

---

[3] After the only witness who could put the gun in his hand was shot, along with his mother, during a violent night-time home invasion, several days before trial, the superseding indictment added three counts of witness tampering to the charge petitioner already faced.

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Petitioner's contention that counsel should have advised him to plead guilty to Count One after it was severed from the remaining counts lacks merit. The record reveals that petitioner, despite his claims otherwise, never had any intention to plead guilty at all. At trial on the witness tampering charges, petitioner testified that on the afternoon before the shootings, he met with counsel and agreed to plead guilty to Count One, because counsel ". . . told me it was the best thing to do." (Dkt.# 178-2 at 374). However, on cross-exam, when challenged on the issue by the AUSA, he insisted he had no motive to shoot the witness Sears,[4] because he had already agreed with counsel to plead to the weapon charge. Hence, he argued, because there would be no trial, there was no need for him to shoot Sears, because Sears would not be testifying against him.[5] This exchange about the evening before the shootings was had:

Q: Worried about your case coming up in a couple days?

A: No. Like I said we was going to take a plea. There wasn't going to be a trial.

Q: But you didn't take a plea, right?

---

[4] Sears was the only person who could testify that he had seen petitioner with the gun in his hand, proving actual, rather than constructive possession.

[5] The shootings occurred in the early morning hours of July 21, 2006. Trial on Count One was originally scheduled for July 26, 2006.

A: Yeah, because your witnesses didn't give any statements. You need to give me something on paper.

MR. PERRI: Your Honor I am going to ask that the witness - - - that the nonresponsive commentary be struck.

THE COURT: Well, I think it is responsive. The jury can consider it along with all of the other evidence.

Dkt.# 178-2 at 379.

Petitioner's own defiant statement, blurted out under oath, admits that the real reason he never actually pled to Count One was because he thought the Government had not produced any written statements from the witnesses and therefore he could not be convicted.[6]   Apparently petitioner mistakenly believed that without Sears' testimony, he could not be convicted of the felon in possession charge.  Not appreciating that he could still be convicted of constructive possession even  if  Sears was unavailable to testify as to his *actual* possession, he declared he was going to plead, but *never actually did so.*  Instead, he immediately set about attempting to eliminate Sears, apparently believing that with Sears out of the way, the Government's case against him on the weapons charge would fall apart, and he would never have had to actually *enter* the plea. Clearly, petitioner had every opportunity to plead guilty to Count One in the months both before and after the shootings, but he managed to avoid ever actually doing so.  Further, it is implausible to assume that counsel, having already advised him to plead guilty to Count One *before* the shootings, would advise him to do otherwise afterwards.  As the Government correctly noted, the letters from counsel petitioner attached as exhibits to his § 2255 motion show that counsel did in fact repeatedly advise him to plead guilty, because the evidence against him was so overwhelming and he could obtain a much lighter sentence by pleading. It is apparent that once petitioner realized that despite his best efforts, Sears

---

[6] It is unclear why Petitioner believed this, because the witness Timothy Sears and his mother, Rhonda West both provided statements identifying him as the shooter.

survived the shootings and was still available to testify, there was no longer any impetus to plead guilty. Instead, he gambled by going to trial and was convicted.

Petitioner's claim, in addition to being completely without merit, fails to demonstrate that counsel's performance fell below an objective standard of reasonableness, nor that he was prejudiced by anything counsel failed to do. He has failed in his burden of proof under Strickland and this claim should be denied.

**Ground Two: Whether trial counsel was ineffective for failing to use the stipulation petitioner entered into with the Government, regarding his intent to plead guilty to Count One**.

Petitioner contends that counsel was ineffective at trial, because he failed to use the stipulation that established that petitioner had already decided to plead guilty to Count One, the felon in possession of a firearm charge, before the shootings of the witness and his mother occurred. Petitioner argues that had only counsel introduced the stipulation at trial, it would have negated the intent element of the witness tampering crimes, such that the jury could not have found him guilty of the witness tampering charges. In his memorandum of law, inexplicably, twice petitioner contends that not only was he planning to plead guilty to Count One, but that he *did in fact do so,*[7] when in fact, he never pled guilty, but went to trial and was convicted on that count.

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct). Judicial scrutiny of attorney performance must be highly deferential.

---

[7] Petitioner contends that " . . .had counsel used the stipulation and had counsel advised Mr. Suggs to plead guilty to Count One, along with Mr. Suggs's [sic] testimony that he was going to, and, indeed, did, plead guilty to Count One of the indictment . . . " (Dkt.# 195-2 at 11). Further, petitioner stated "[a]fter all, Mr. Suggs had already decided to plead guilty before the assault; the Government agreed to this fact, and the trial evidence showed that he subsequently pleaded guilty to his original offense." (Id.).

Strickland *supra* at 694. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland at 694 - 95, *quoting* Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158; 100 L. Ed. 83 (1955).

In this case, the stipulation (Dkt.# 101) was drafted in order to obviate the need for new defense counsel for petitioner's second trial on the witness tampering charges. Because the only witness who could corroborate that petitioner had ever stated he planned to plead guilty to the felon in possession charge was defense counsel, the stipulation resolved the potential ethical dilemma of defense counsel being called as a witness in the same matter he was litigating. The stipulation was entered several days before the first trial.

Defense counsel's decision not to utilize the stipulation was likely made after a thorough consideration of its potential consequences. Introducing the stipulation may well have diminished petitioner's already less-than-credible position in the jury's eyes, because they could not help but wonder why he had chosen to go to trial if he was, at least at some point, willing to admit his guilt by entering a plea. In fact, this very contradiction was seized upon by the Government at trial, during a vigorous cross exam. As such, forgoing introducing the stipulation, a piece of evidence that was not going to help petitioner's case, that might actually draw more attention to the discrepancies in petitioner's claims and make him appear even less credible than he already was, was likely a strategic decision that was not unreasonable under the circumstances. A strategic

11

decision generally will not be second-guessed. <u>Wiggins v. Corcoran</u>, 288 F.2d 629, 640 (4th Circ. 2002).

This claim lacks merit and should be denied.

**<u>Ground Three</u>: Whether trial counsel was ineffective for incorrectly advising petitioner of his proposed Count Two guilty plea sentencing exposure.**

Petitioner argues that counsel was ineffective for providing incorrect advice regarding his proposed guilty plea sentencing exposure. To support his argument, petitioner attaches three letters[8] from counsel, wherein he alleges that counsel erroneously advised petitioner that the Government's plea offer on Count Two[9] of the superseding indictment would result in his exposure to a sentencing range of 235 to 293 months' imprisonment. Petitioner contends that although counsel correctly informed him that his base offense level would be 33 and that under U.S.S.G. § 2A2.1(b)(1)(B)[10] he would receive a two-level enhancement, counsel also erroneously informed him that he would receive another two level enhancement for obstruction of justice under U.S.S.G. §3C1.1,[11] "because Mr. Sears [the person who was assaulted] was a witness." However, petitioner argues, counsel should have advised him that the sentencing range was only 168 to 210 months' imprisonment, because U.S.S.G. §3C1.1 did not apply because "enhancement for obstruction of justice constitutes impermissible double-counting only when the conduct giving rise to the enhancement is identical

---

[8] There was one letter dated October 27, 2006 (Dkt.# 195-3), and two letters dated November 2, 2006 (Dkt.# 195-4 and 195-5).

[9] Count Two of the superseding indictment was "Tampering with a Witness, Intent to Kill."

[10] U.S.S.G. § 2A2.1(b)(1)(B) states: Assault with Intent to Commit Murder; Attempted Murder. Specific Offense Characteristics. (1) If (B)the victim sustained serious bodily injury, increase by **2** levels[.]

[11] U.S.S.G. §3C1.1 states: Obstructing or Impeding Justice: If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

to the conduct giving rise to the underlying conviction." U.S. v. Hughes, 401 F.3d 540, 558 (4th Cir.

2004). He argues that had he been properly informed of his true sentencing exposure, he would have

accepted the plea agreement offer.

The undersigned finds petitioner's argument unpersuasive. Several Circuits of the United

States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by

defense counsel is not a constitutionally deficient performance rising to the level of ineffective

assistance of counsel." Hughes v. United States, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing

United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711,

717 (7th Cir. 2006), cert. denied, 127 S.Ct. 1027 (2007); United States v. Foster, 68 F.3d 86, 87-88

(4th Cir. 1995). Furthermore, it has been noted that:

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are
> extraordinarily difficult to predict. Although the sentencing guidelines significantly
> restrict the sentencing discretion of the district courts, that discretion is still
> extensive, and predicting the exercise of that discretion is an uncertain art.
> Therefore, . . . a mistaken prediction is not enough in itself to show deficient
> performance, even when that mistake is great[.]

Hughes, 2007 WL 841940 at *5, quoting United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

All petitioner has demonstrated is that his counsel gave an inaccurate prediction regarding

a potential sentence length. Petitioner has not alleged or established any other evidence required

to make a cognizable claim for ineffective assistance of counsel. Moreover, contrary to petitioner's

belief, by including these letters, petitioner refutes his own claim. In the October 27, 2006 letter,

after counsel set forth the various sentencing calculation possibilities, he stated:

> Of course, my analysis and application of the Sentencing Guidelines is essentially
> my best estimate of what the outcome would be. Without reviewing the Presentence
> Investigation Report I do not know exactly what the final outcome would be. This
> is true especially when it comes to your criminal history, which, as I stated before,
> I need to discuss with you in person and will do so when we meet today.

(Dkt.# 195-3 at 2).

Clearly, petitioner was aware that counsel's sentencing estimations were just that: *estimations*, and the record shows that he was advised, well in advance of either trial, that it was impossible to know with certainty exactly what his sentence would be, at that point in time. Moreover, in counsel's second letter, dated November 2nd, 2006, counsel referenced the recent discussions he had recently had with petitioner about the Government's offer of a plea agreement to Count Two, explaining

> I wanted to memorialize the multiple discussions we had earlier today. First, we discussed my other later [sic] dated November 2, 2006 and my opinion that if this case proceeds to trial, that you will be convicted on all counts. In the likely event that you are convicted, the letter then discussed my application of the . . . Guidelines to your conviction on all counts . . . your maximum exposure would be 365 months or 30.4 years. I had told you that in my opinion, the judge at sentencing would, by stacking possible sentences from the other convictions (in addition to Count Two), sentence you to the full 365 months or 30.4 years. With good time in prison you would serve approximately 25.84 years. If it is determined that you are eligible for the 500 Hour Drug Treatment program, you could get an additional one year off that sentence, therefore serving in the end approximately 24.85 years. **As I told you, after our first meeting this morning, I . . . spoke . . . with . . . [AUSA] David Perri. He informed me that he would offer a plea agreement wherein you would plead to Count Two of the Superseding Indictment. The other counts would be dismissed as part of the plea.** He would also recommend that the judge sentence you to the low end of the guideline range and guaranteed that the State of Ohio would not pursue charges against you for the 2 counts each of felonious assault (each a F-2 felony under Ohio law with a possible sentence of 2-8 years) and 2 counts of aggravated burglary (each a F-1 felony under Ohio law with a possible sentence of 3-10 years. As discussed previously, in applying the guidelines to a guilty plea to Count Two, your final offense level would be 37. With acceptance of responsibility for entering the plea you would receive a 2 level reduction to your offense level, resulting in a final offense level of 35. With a Criminal History Category of IV your sentencing range would be 235-293 months. The low end of the range, or 235 months, translates into 19.58 years. Again, it is possible for the judge to sentence you higher in the range, but he would be capped by the 20 year statutory maximum (see 18 U.S.C.A. § 1512(a)). As this would be the only count of conviction, the judge would not be able to reach to other counts of conviction (as he will most likely do when you are likely convicted on all four counts) to increase you [sic] penalty beyond 20 years. If the judge in fact sentences you to 235 months, with good time in prison you would serve approximately 16.65 years. If it is determined that you are eligible for the 500 Hour Drug Treatment program, you could get an additional one year off that sentence, therefore serving in the end approximately 15.65 years. The benefit of the plea is that it will save you essentially 10 years of prison time and will

guarantee that the State of Ohio will not pursue its own charges against you. **I know that after speaking with you about this offer that you indicated that you have no desire to enter into a plea agreement as just discussed (and as discussed with you this morning after my meeting with David Perri. [sic] However, I would ask that you think very hard and carefully about this offer. Again, in my mind and in my opinion, if you choose to go to trial you will be convicted on all 4 counts and will be sentenced to approximately 30 years in prison. Again, the decision is ultimately yours.** My job is to advise you of your options and what my opinion is about the facts of the case.

Dkt.# 195-5 at 1 - 2. *(emphasis added).*

Clearly, as the Government's response points out, petitioner was unwilling to plead to *any* of the counts he was charged with. Trial testimony by the witness Alexander about the conversation he had with petitioner several hours before the shootings, at a time when all petitioner was currently facing was a possible two-to-less-than-five year sentence if he pled the weapon charge, was that petitioner said "I got to get him [Sears]. I got to 'murk'[12] him because I can't go away for that amount of time. I am going to miss my child growing up." (Dkt.# 177-3 at 176). In fact, petitioner stated he was unwilling to do *any* time at all on the weapon charge, as Alexander testified later: " . . . like he got to go ***because I can't, you know, do no time***. I got a child. I just had a newborn." (Id. at 177) *(emphasis added).* If petitioner was unwilling to do *any* time, even a sentence of under five years on the weapon charge, it is defies logic to assume that he ever had any intention of accepting an offer to plead to Count Two, with its potential for 15 ½ to 20 years of imprisonment.

In the face of the evidence and testimony on the record, petitioner cannot credibly argue that if only he been properly informed of his true sentencing exposure, he would have accepted the plea agreement offer. Clearly, petitioner was never going to accept a plea offer. The letters he provides, when read in their entirety, reveal that the decision to go to trial was against the advice of counsel.

---

[12] The Urban Dictionary defines "murk" thus: "To kill; murder." As in: "Yo, I should have murked his ass." <http://www.urbandictionary.com/define.php?term=murk>

Petitioner cannot piecemeal his argument by only selecting passages that seem favorable to him. The record must be read in its entirety. Petitioner invited a close reading of the letters by attaching them, and the letters include language that does not comport with petitioner's claim. By including the entire letters, petitioner has helped defeat his own claim, and in keeping with the consistent notation of the Fourth Circuit: "[a] defendant in a criminal case cannot complain of error which he himself has invited." United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994), citing Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir. 1993) (en banc), cert. denied, 510 U.S. 1131(1994).

Finally, the alleged disparity between counsel's sentencing estimates and the sentence ultimately imposed is a direct result of petitioner's own choices, not because of any dereliction of duty by counsel. At trial, petitioner took the stand, denied all of the aforementioned testimony, as well as his involvement in the assault and shootings, claiming it was a case of 'mistaken identity' by the victims. The fact that the jury found the petitioner guilty despite this defense does not establish that defense counsel was ineffective. It merely shows that the jury did not believe petitioner was telling the truth. Petitioner alone subjected himself to the possibility of enhanced sentencing by being in possession of a firearm when he had not had his civil right to do so restored; by committing further felony offenses using a firearm to try to eliminate the witness; and by insisting on taking the stand and testifying falsely about it all at trial. The decision to go to trial was petitioner's; counsel is not responsible for the lengthy sentence and the enhancement for obstruction of justice that were founded on extensive and damaging trial testimony

Relief should be denied because this claim is utterly lacking in merit and petitioner has not met his burden.

**Ground Four: Whether appellate counsel was ineffective for failing to raise the issue of Count Three's constructive amendment on appeal.**

Petitioner contends that appellate counsel was ineffective because he did not raise as grounds for appeal, the 'constructive amendment' of Count Three that occurred when, at trial, the word "intimidated" was erroneously included in the jury instruction, when it was not a part of the wording of the statute defining the crime.   He argues that this issue was "far stronger" than the other issues appellate counsel raised on appeal.  In support,  he cites U.S. v. Foster, 507 F.3d 233, 243 (4th Cir. 2007), which holds that "[c]onstructive amendments are error  per se and, given the Fifth Amendment right to be indicted by a grand jury, 'must be corrected on appeal even when not preserved by objection.'"

The standard of effective assistance of appellate counsel is the same as for trial counsel.  See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted).  On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164.  Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989).  "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective

advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

In this case, at trial, in Section IV of the jury instructions, "The Indictment," setting forth Count Three, the language of Title 18, U.S.C. § 1512(a)(2)(A) was correctly quoted:

> On or about July 21, 2006 at or near Steubenville, Jefferson County , Ohio, defendant, RICARDO M. SUGGS, Jr., with intent to influence, delay and prevent the testimony of a person in an official proceeding, to wit: the jury trial scheduled in the matter of United States v. Ricardo M. Suggs, in the United States District Court for the Northern District of West Virginia, Case Number 5:06CR26, **did use physical force** and the threat of physical force against that person, known to the Grand Jury by the initials "T.S.," and that person's mother by shooting them, and did attempt to do so, IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1512(a)(2)(A).

Dkt.# 147 at 10 *(emphasis added)*.

However, "The Statute," Section V of the jury instructions for Count Three (Tampering with a Witness - Use of Force) stated, in pertinent part:

> Count Three of the indictment charge [sic] the defendant with tampering with a witness through the use of force in violation of Title 18, United States Code, Section 1512(a)(2)(A). In order to convict the defendant of Count Three, the government must prove the following essential elements beyond a reasonable doubt: FIRST: On or about July 21, 2006, the defendant Ricardo M. Suggs, Jr. knowingly ***intimidated or* used physical force** against the person identified in the indictment as a witness; and SECOND: The defendant did so with the intent to influence, delay or prevent the testimony of that person in an official proceeding.

Id. at 12 *(emphasis added)*.

Under the jury instructions' Section VII, "General Instructions," the word "intimidation"[13] is defined as

> The term "intimidation" as used these [sic] instructions means the use of any words or any actions that would harass, frighten, or threaten a person to do something that person would not otherwise do or not to do something that the person otherwise would do.

Id. at 14.

There is no mention of "intimidated" in current version of Title 18, U.S.C. § 1512(a)(2)(A). Apparently, in the drafting and preparation of the jury instructions, the District Court erroneously included an older version of the witness-tampering statute, which was amended in 1996. The error was not noticed by the Court and neither the Government nor defense counsel objected when the instructions were reviewed during the jury charge conference (Dkt.# 179 at 409) or when the instructions were later read to the jury. (Id. at 451).

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." U.S. v. Floresca, 38 F.3d 706 (4th Cir. 1994), quoting Stirone v. U.S., 361 U.S. 212, 215 - 16, 4 L. Ed. 2d 252, 80 S. Ct. 270 (1960). And although it is true that "constructive amendments of a federal indictment are error per se, and under Olano,[14] must be corrected on appeal even when not preserved by objection, Floresca at 714, it is also true that "not all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment. As long as the proof at trial does not add

---

[13] "Intimidation" is an element of Count Four, Tampering with a Witness - Corruptly Persuade, (a count that petitioner was not convicted of), so its inclusion in the General Instructions section of the jury instructions was proper.

[14] U.S. v. Olano et al., 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L.Ed. 2d 508 (1993), set forth the standards for the plain error test. To establish plain error, a defendant must show (1) error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings, i.e., affected its outcome.

anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." U.S. v. Hinton, 366 Fed. Appx 481, 485 (4th Cir. 2010)(per curiam), *quoting* U.S. v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). When analyzing a constructive amendment claim, "it is the broadening [of the bases for a defendant's conviction] that is most important - nothing more." Floresca, *supra* at 711. The key inquiry is whether the defendant has been tried on charges other than those made in the indictment. U.S. v. Brice, 369 Fed. Appx.416, 419 (4th Cir. 2010)(per curiam). Olano also held that "Fed. R. Crim. P. 52 provides: (a) Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. (b) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Olano, *infra* at 731. In order to prevail on his constructive amendment claim, petitioner must survive the plain error test set forth in Olano: he must show that there was 1) error; 2) it was plain; 3) it affected his substantial rights; and 4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings (i.e., affected its outcome). Olano, *supra* at 732.

The jury instructions' prior Section IV, "The Indictment,"correctly quoted the language of Title 18, U.S.C. § 1512(a)(2)(A) from the Indictment that was applicable to Count Three, using only the words "did use physical force and the threat of physical force." Furthermore, at trial on the witness-tampering charges, the Government's closing argument clearly and unequivocally stated the correct elements to be proven for Count Three versus Count Four:

> [Count Three] Tampering with a witness, use of force. Timothy Sears was scheduled to be a witness in this court. The defendant used physical force against him. The defendant's intent in doing so was to influence or delay or prevent the testimony of this person at trial.

> [Count Four] Tampering with a witness, corruptly persuade. A person named Timothy Sears was scheduled to be a witness in this court. The defendant used intimidation or corrupt persuasion toward this person. The defendant's intent in doing so was to influence or delay or prevent the testimony of this person at trial.

20

. . . In the first count, he attempted to kill the witness. In the second count,[15] what he did was shot the witness, by use of force. In the third count, what he did was he used intimidation and he tried to corruptly persuade this witness . . .

Dkt.# 179 at 415 - 417.

The facts of this case are remarkably similar to those in U.S. v. Murphy, 406 F.3d 857 (7th Cir. 2005),[16] a case involving the beating of a witness viewed as a 'snitch' by the drug-dealing defendant, where, at trial, the jury instruction likewise included the old version of the witness tampering statute, using the word "intimidated" after the statute's amended version removed that language. On appeal, Murphy argued that his indictment had been constructively amended and therefore, the jury had found him guilty of conduct for which he had never been charged. Although he could prove that there had been plain error that affected his substantial rights, in light of the evidence of violence and injury presented at trial, he could not prove the fourth prong of Olano, that the error had "seriously affected the fairness, integrity, or public reputation of the judicial proceedings."

An indictment that is constructively amended at trial violates the Constitution, because the Fifth Amendment requires that a grand jury's indictment guarantee that the allegations in an indictment and the proof presented at trial match, to ensure that the defendant is not later exposed to a second prosecution, and to give the reasonable notice of the charges, so that he can prepare his defense. Murphy, *supra* at 861.

As the Government's response noted, here, even if the jury instruction had not been rendered overbroad by the erroneous inclusion of the words "intimidated or" when it quoted the prior version

---

[15] The Government's closing argument references the three witness-tampering counts differently from the way they were originally numbered in the indictment. Because Count One of the Indictment was tried separately first, the remaining counts, Two, Three and Four, were separately tried at the second trial, and there referred to as One, Two and Three. Accordingly, what was Count Three of the Indictment was referred to as Count Two in the Government's closing argument.

[16] Petitioner also cited to U.S. v. Murphy in his memorandum in support of his § 2255 motion.

of the statute in its Count Three instruction, the jury would have reached the same result. The horrific facts, overwhelming and unequivocal evidence presented at trial, describing petitioner's violent and terrifying 3 a.m. home invasion, and his repeated attempts to shoot to kill the witness Sears, and his shooting of Sears' mother, provided ample proof that knowing use of "physical force" was used, sufficient for the jury to arrive at the same conclusion.[17]

Accordingly here, the erroneous inclusion of the words "'*intimidated or*' used physical force " in Section V of the jury instructions, "The Statute," on Count Three does not rise to the level of a constructive amendment. There was no unconstitutional amendment of the indictment. The district court did not permit petitioner to be convicted of an offense not included in the indictment. Nor did the judge allow proof outside that suggested by the indictment. The jury instruction's erroneous mention in one place of the word "intimidated" where the statute did not include it was negated by its correct statement of the charge from the indictment that did not include that language; the overwhelming evidence of violent force with resultant injuries that was presented at trial; and the Government's closing argument, which correctly stated the charge and summarized all the evidence presented, without including the erroneous "'intimidated or' used force" language. This is exactly the same scenario as in Murphy, *supra,* where the Seventh Circuit Court of Appeals held that the defendant could not prevail under the fourth prong of Olano's plain error analysis. The facts of this case are even more egregious than those in Murphy; based on the totality of the overwhelming evidence demonstrating the violent physical force petitioner used against the victims, like Murphy, petitioner cannot prove the fourth prong of Olano: that he was prejudiced by the error, since he would have

---

[17] Even if the amended statute on Count Three no longer included the words "intimidated or" [used physical force], common sense dictates that anyone hearing the horrendous facts of this case would immediately conclude that, under the circumstances of this case, the victims would have been extremely intimidated, terrified, even, by petitioner's repeated inflictions of deadly force on them that night, whether the statute spelled it out or not.

been convicted anyway. This is exactly the type of situation contemplated by Fed. R. Crim. P. 52(a), where an error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

Furthermore, also as noted by the Government, this claim is moot. Even if petitioner's conviction on Count Three were vacated, he would still be required to serve the exact same sentence, because he received identical sentences on Counts Two and Three, to run concurrently.

Clearly, here, appellate counsel examined the record with a view to selecting the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Since this issue lacked merit, did not rise to the level of a constructive amendment and did not affect petitioner's substantial rights, and furthermore was moot, it is no surprise that appellate counsel did not choose it as an issue for appeal. This is not a situation where an ignored issue was clearly stronger than those presented, such that the presumption of effective assistance of counsel could be overcome. This claim should be denied.

### IV.  Recommendation

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion be **DENIED and DISMISSED with prejudice** from the docket.

Therefore, petitioner's requests for the following should all be **DENIED** as moot:

**A.**     Petitioner's May 27, 2009 § 2255 motion request to have his convictions vacated and be re-sentenced;

**B**.     Petitioner's July 27, 2009 requests, contained within his Reply to the USA's Response to his § 2255 motion, that the District Court vacate his convictions on Counts One, Two and Three, permit him to plead guilty to Count One and be retried on Count Two and Three, or, in the alternative, vacate and dismiss Count Three based on its constructive amendment; or

**C.**     Vacate his convictions on Counts One, Two and Three and permit him to enter a plea of

guilty to Count Two; and

**D.**     An evidentiary hearing to resolve factual disputes in his § 2255 motion claims of ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: October 28, 2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE